IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SCOTT MEACHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: |
| v. | ) |
| | ) |
| T-MOBILE USA, INC. | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S COMPLAINT WITH
DEMAND FOR JURY TRIAL**

Now comes the Plaintiff, SCOTT MEACHAM (hereinafter "Plaintiff" or "Meacham"), and files his Complaint against the Defendant, T-MOBILE USA, INC. (hereinafter "Defendant" or "T-Mobile") and says:

## NATURE OF THE CLAIMS

1. This is an action for monetary damages, pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (hereinafter the "FMLA") to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's interference with Plaintiff's lawful exercise of his rights under the FMLA, and retaliation against Plaintiff for exercising his rights under the FMLA, thereby leading to his unlawful termination.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding Plaintiff's rights under the FMLA.

1

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PARTIES

4. Plaintiff, Meacham, is a citizen of the United States, and is and was at all times material, a resident of the State of Florida.

5. Defendant, T-Mobile, is a Delaware for-profit company with its principal place of business in Bellevue, Washington. T-Mobile, both directly and through operating subsidiaries, is in the business of providing personal wireless telecommunications services throughout the United States. T-Mobile is authorized to conduct business in the State of Florida.

6. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## FACTS

7. At all times material, Plaintiff worked for Defendant at 4636 East Colonial Drive, Orlando, FL 32803.

8. Plaintiff was employed by Defendant for over fourteen (14) years, from approximately September 2003 through December 2017, and at the time of his termination, Plaintiff held the position of Retail Associate Manager.

9. Plaintiff was a full-time employee who regularly worked at least forty (40) hours per week.

10. Plaintiff satisfactorily performed the duties and requirements of his job position.

11. In or about March 2016, Defendant underwent a shift in management and employed Caroline Jacklin as District Manager over Plaintiff's district, specifically the Orlando Central District.

12. Immediately, Ms. Jacklin subjected Plaintiff to disparate and discriminatory treatment and expressed her intentions to transfer Plaintiff to another district.

13. Plaintiff requested to remain in his current district and explained that he was the sole caretaker of his mother who suffered from multiple serious medical conditions and as a result, Plaintiff needed to remain in close proximity to her.

14. On at least five (5) separate occasions, Plaintiff declined Ms. Jacklin's request to transfer him to another district.

15. Ms. Jacklin threatened Plaintiff's employment and stated Plaintiff's "…reputation would be tarnished," and his "…name [would] be dragged through the mud," for refusing her requests.

16. As a result of Plaintiff declining Ms. Jacklin's request(s), Plaintiff's work environment became hostile and tenuous and Plaintiff continually feared retaliatory action from Ms. Jacklin.

17. On or about September 10, 2017 Hurricane Irma hit the state of Florida.

18. Plaintiff's residence located at 3016 Chelsea Street, Orlando, FL 32803, suffered substantial damage from Hurricane Irma, including but not limited to being without power for fifteen (15) days following the storm and damage to the roof and surrounding areas of his property.

19. Plaintiff lived at the above residence to care for his elderly and infirmed mother, which was held and titled in trust, with Plaintiff acting as Trustee for the benefit of his mother.

20. Following the impact of Hurricane Irma, Defendant circulated information to its Florida employees with regard to the process of requesting relief under its Employee Relief Fund ("ERF"). Because of the substantial damage sustained to his above residence suffered as a result of Hurricane Irma, Plaintiff initiated an application under Defendant's ERF.

21. Despite living at the residence listed above since May 2017 to care for his mother Plaintiff mistakenly failed to update his primary residence information with Defendant.

22. Defendant's Employee Care Team contacted Plaintiff about his ERF application and requested additional documentation to process Plaintiff's request. At that time, Plaintiff explained to Defendant that his residence was held in a trust for the benefit of his mother and that he jointly held title to the property with his mother. Plaintiff further inquired as to whether he qualified for assistance through Defendant's ERF program and explained to the Employee Care Team on numerous occasions that he was "…confused as to the process."

23. Defendant's Employee Care Team provided little to no assistance in answering Plaintiff's questions but explained that approval of assistance under the ERF was provided "on a case-to-case basis," and merely requested that he complete the application.

24. Shortly thereafter, Plaintiff's mother suffered serious medical complications and required hospitalization in the intensive care unit (ICU). As a result of his mother's hospitalization, Plaintiff did not immediately complete his ERF application.

25. In response to his mother's hospitalization, Plaintiff informed Ms. Jacklin in early October, 2017 that he required leave under the FMLA as a result of his mother's serious medical conditions.

26. On or about October 28, 2017, Plaintiff completed his application for FMLA and was approved for leave.

27. While on leave under the FMLA, Defendant's Human Resources Representative, Tammanna Patel and Ms. Jacklin informed Plaintiff that he had not completed the ERF application and requested additional documentation. Plaintiff communicated with Ms. Patel and reiterated the fact that his residence was titled in a trust, with Plaintiff acting as Trustee.

28. Ms. Patel and Ms. Jacklin goaded Plaintiff into completing the ERF application and stated that Plaintiff "…needed to complete [his] application," to receive relief funding.

29. Upon information and belief, Ms. Patel and Ms. Jacklin knew Plaintiff was not eligible and/or qualified to receive assistance under Defendant's ERF program based on the fact that the property he sought relief for was not listed as his primary residence with Defendant but coaxed Plaintiff into completing the application nevertheless in an attempt to create pretext for Plaintiff's termination.

30. Ms. Jacklin also sent numerous text messages to Plaintiff's personal cellular device while he was caring for his mother on leave under the FMLA, stating that he "…needed to get his shifts covered for his time out of work or else," and threatened Plaintiff that if he was unable to cover his shifts he would need to "…work [them]."

31. Upon information and belief, Plaintiff believed Ms. Jacklin's communications were made to dissuade and discourage Plaintiff from engaging in the use of leave under the FMLA for fear of retaliatory behavior.

32. Plaintiff escalated his concerns to Defendant's Human Resources Department and communicated with Ms. Patel regarding Ms. Jacklin's interference with his leave under the FMLA.

33. Defendant's Retail Store Manager, Casey Powers, further interfered with Plaintiff's rights under the FMLA and contacted Plaintiff on a number of occasions while on FMLA leave to complain about having to work additional hours as a result of Plaintiff's leave.

34. Upon information and belief, Mr. Powers' actions were made in an attempt to interfere with Plaintiff's rights under the FMLA and discourage Plaintiff from engaging in further use of leave under the FMLA.

35. On or about December 9, 2017, Plaintiff returned to work and was called into a meeting with Ms. Patel and Ms. Jacklin wherein Defendant interrogated Plaintiff about his ERF application.

36. Ms. Jacklin informed Plaintiff that his application for relief under Defendant's ERF program had been denied and explained that Plaintiff's application "…doesn't add up." Plaintiff again informed Defendant that the property in question was his residence and attempted to provide Defendant with copies of the trust documentation showing same.

37. Ms. Jacklin implied Plaintiff's application was made in an attempt to defraud Defendant through the ERF program and denied Plaintiff the opportunity to provide any further documentation.

38. Plaintiff questioned Ms. Patel and Ms. Jacklin if he was being terminated and was informed to "go home," and "return to work Monday."

39. Immediately thereafter, Plaintiff escalated his concerns and filed a complaint through Defendant's Compliance and Ethics department stating he felt "targeted and verbally harassed by Caroline" and further that he believed Ms. Jacklin was "retaliating" against him.

40. On December 11, 2017, Plaintiff returned to work but experienced issues with clocking in and/or logging into his company provided email account.

41. Plaintiff worked for approximately two (2) hours before he was called into a meeting with Nelson Rosa (District Manager) and Casey Powers (Retail Store Manager) who terminated Plaintiff's employment.

42. Plaintiff questioned Mr. Powers and Mr. Rosa as to why his employment was being termination but was not provided any explanation and was merely informed that he "…no longer work[ed] [t]here."

43. Upon information and belief, Defendant's justification for Plaintiff's termination was pretextual and made in retaliation for Plaintiff's legitimate and lawful exercise of his rights under the FMLA.

44. Prior to Plaintiff's wrongful termination, Plaintiff was not aware of any disciplinary actions and/or poor performance that would otherwise justify his termination.

45. Plaintiff has been damaged by Defendant's illegal conduct.

46. Plaintiff has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### Count 1: FMLA Retaliation

47. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46, above.

48. Plaintiff was an employee eligible for protected leave under the FMLA.

49. Defendant is and was an employer as defined by the FMLA.

50. Plaintiff exercised, or attempted to exercise, his rights under the FMLA.

51. Defendant retaliated against Plaintiff for exercising, or attempting to exercise, his FMLA rights.

52. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

53. Plaintiff was injured due to Defendant's willful violation of the FMLA, to which he is entitled to legal relief.

## Count 2: FMLA Interference

54. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-45, above.

55. Plaintiff was an employee eligible for protected leave under the FMLA.

56. Defendant is and was an employer as defined by the FMLA.

57. Plaintiff exercised, or attempted to exercise, his rights under the FMLA.

58. Defendant interfered with Plaintiff's lawful exercise of his FMLA rights.

59. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

60. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which he is entitled to legal relief.

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in the amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b) Grant Plaintiff his costs and an award of reasonable attorneys' fees (including expert witness fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

***/s/ Abby Salzer***
Abby Salzer
Florida Bar. No. 0591475
abby.salzer@spielbergerlawgroup.com
**Spielberger Law Group**
4890 W. Kennedy Blvd., Suite 950
Tampa, FL 33609
T: (800) 965-1570
F: (866) 580-7499

*Attorneys for Plaintiff*